Thank you, Your Honor. Good morning, and may it please the court, my name is Jerry Shapiro, counsel for the petitioner Rafael Rodriguez Diaz. I would like to reserve two minutes for rebuttal. Mr. Rodriguez has been a lawful permanent resident since 1990. He's the father of two U.S. citizen children. Both of his parents had lawful status in the United States as do most of his eight siblings. Now, Mr. Rodriguez has a conceivably long criminal record, including two violations of California Penal Code Section 273AA, 2003 and 2009, that's for driving under the influence of a minor child in his car. In 2012, three years after his second violation of the statute, he was charged with removability for that conviction under USC 1227A2EI for being convicted of a crime of child abuse, child neglect, or child abandonment. The immigration judge and the BIA called the conviction for 273AA categorically a crime of child abuse, as defined in the statute, and the immigration judge found the offense fell squarely within the definition of crime of child abuse set forth by the BIA in the matter of Velazquez and the matter of Soran. Well, Mr. Shapiro, this is Judge Callahan. I guess the question, to the extent that you definition of a crime of child abuse should not extend to instances where the child is not actually harmed, why are we not bound by our opinions in Alvarez, Serratanio v. Sessions, and Mendez v. Whitaker? Well, Your Honor, with Alvarez, Alvarez was decided just weeks after this court made its decision on Martinez v. Dio. With Martinez v. Dio, the case was up for re-hearing when the... Well, I realized it was taken en banc, but then the petitioner died, so you don't have an en banc opinion, but you have that one vacated. But the problem is, it seems that, but the other cases still are precedent, even though, and so to the extent that they rely on that case, they're still precedent. Well, Your Honor, the court in Alvarez, Serratanio, relied on and indicated that it was bound by the decision in Martinez v. Dio, and that's because, again, weeks earlier, Martinez v. Dio had held that the generic definition announcing Soran was entitled to chevron deference, and the Alvarez-Serratanio panel noted it was bound by that precedent. But Martinez v. Dio has been vacated, so it doesn't appear that Alvarez-Serratanio could be bound by it. And I would also note, Your Honor, that Judge Garzon, who was concurring in Alvarez-Serratanio, stated that if the panel was not bound by Martinez v. Serratanio, she would have ruled in accordance with Judge Wardlaw, who wrote a lengthy dissent in Martinez v. Dio. So I'm not sure that the court would be bound any longer by Alvarez-Serratanio, since it very expressly said that it was only bound by Martinez v. Dio, which has been vacated. Well, I guess, though, recently, last week, I think, or recently, on December 22, 2020, there's a matter of Rivera-Mendoza, which holds that a conviction for child neglect in the That's sort of consistent with those other cases. And I think, wasn't the 11th Circuit was the only one that was sort of going the way that you're going, and now other circuits have continued to join the 9th Circuit? That's right. In Rivera-Mendoza, which was just a month ago, the BIA noted that the 9th Circuit had deferred to the definition in SOROM, and that the generic crime of child abuse included accidental omissions that create, that had to do with the risk of harm. But I would contend that with the, with Martinez v. Dio being vacated, the court that relied on it, explicitly relied on it, can no longer be bound by it. There's, in other words, there's no, there's no, with the, the vacateur of that case, there's nothing on the issue of endangerment, for the 9th Circuit has issued a ruling. I would just go on to say that with Alvarez-Cedeno, that was also a case of involving a risk of harm. It wasn't looking to see if endangerment statutes were covered by the child abuse statute. Go ahead. Maybe I'm misunderstanding your point about the reliance on the decision in Martinez v. Dio. The 9th Circuit had ruled, they then took the case in bonk, then the plaintiff died, and so the matter became moot and was dismissed. But that doesn't erase the original decision, does it? Or am I missing something there? Well, I think it, I think it's fake. The original decision would have been vacated when we go on bonk. So it doesn't say, it doesn't, it doesn't, we don't have an on-bonk opinion saying what the petitioner here is asking. But the other one isn't on the books. If that would be, I think I'm correctly stating what happens on the 9th Circuit. Okay, this is, this is, thank you. I know our on-bonk process is a bit complicated. Well, it makes me glad to be a district judge. But anyway. Well, and that was my understanding. That was my understanding as well, Your Honor, that with But the other cases are not, but the other cases are not wiped out. The two that I mentioned to you are still 9th Circuit precedent. And so you, your argument has to be that because you say the only reason they were decided that way that it therefore invalidates them, but it doesn't, they're not off the books, they're on the books. Those other cases are on the books. But Alvarez-Sarantino was addressing the risk of harm issue, not whether or not endangerment was, was included within the child abuse statute, Your Honor. Okay. What else would you like to say? I'm running out of time, but I would like to just take one minute to say that. Okay, you can, yeah. Okay, take the minute and then reserve for rebuttal. It was that Mr. Rodriguez convicted of child endangerment. There was no harm or injury of any kind of a child. And the question here is whether it's reasonable for the BIA to define the words of the statute to encompass convictions for what it calls endangerment type offenses that criminalize acts. You know, I guess you're in some ways, but yes, the child, there are two children, both of his children on separate occasions he put in the car when he was drunk. So he, he has a difficult time that it's wrong. That being said, I'm sure that you're aware that more people are killed by drunk drivers than are actually murdered. So it's, yes, he does have going for him that he didn't kill his children because he was drunk, but it's, you're kind of pushing a rock uphill to convince me anyway, that that's not dangerous conduct. Oh, Your Honor, I don't disagree at all. And it, of course, it's dangerous conduct. And, and he was, he has a string of DUIs, and these, these were just two of them. But I would just want to know, Does he have like seven or something? He doesn't, he doesn't have just two. I mean, but he has two with those convictions. Exactly. He had, he had others as well. All right. Do you want to save the balance of your time for rebuttal? Yes. Thank you, Your Honor. Thank you. All right. We'll hear from Ms. Miles, I believe. Is it? Yes, yes, I'm a late entry. But I'm handling the case today. Good morning, Your Honors. May it please the court. I'm Erica Miles for the United States Attorney General. As Your Honor noted, there are two precedent decisions on the book that recognize that this court accords Chevron deference to the board's complete definition. You know, after the matter of Sorem decision clarified its, its position of its existing, otherwise thorough definition already deferred to back in 2009, by this court in Fregoso. And petitioner has not presented any good reason for this court to stop deferring to the board. Let me ask you this, let me ask you this, though, accepting that an act need not be perpetuiveness, be criminal, why isn't the BIA's definition of crime of child abuse, which covers passive conduct, broader than the definition of criminal negligence? The why isn't it broader than the concept of criminal negligence? Yes. Criminal negligence is the mens rea. And it is beyond the civil standard for negligence. Criminal negligence means that a person under ordinary circumstances has not acted reasonably. And without regard for risk of harm, criminal negligence is high in the board set the board's minimum mens rea is criminal negligence. But also to be sure, it's not just the definition of child abuse, the statutory term is child abuse, child neglect, or child abandonment. And that is Congress's term in the statute and the board and matter of Sorem made clear that its definition as previously articulated, covers also child neglect and child abandonment. And in an in examination of that entire statutory term, that's where it clarified when it presented with an endangerment statute in that case, that endangerment types offenses can qualify just as long as that risk of harm to children is sufficiently high. Now, I think I think I, if I'm not mistaken, DS Rodriguez asserts that because California Penal Code 273 AA is the one that we're talking about can be violated by passive conduct, exposing a child to a dangerous situation. It can be he's alleging it can be violated in good faith and thus not be turpitudinous and should not be considered a crime. What's your response to that argument? Turpitudinous for one has no place in examining this statute. That's, that is primary. But secondarily, the minimum mens rea, according to the California Supreme Court in Valdez, for this statute is criminal negligence. So it involves both criminal negligence for passive for passive acts, or they call them indirect acts against children. So willful under the statute because the statute says willful, and then it has a prong where it's actual acts. So in Valdez, the Supreme Court explained that willful acts which are indirect amount to criminal negligence mens rea. For direct acts, those are a general intent to actually do the act. So this this California statute is certainly not broader than the board's definition because the minimum mens rea of criminal negligence for the California statute meets the minimum mens rea for the board's definition. As for justice, so that I understand your argument that, you know, we also set the scene for the en banc case that it was called en banc. So it's vacated. A decision that CDO, I guess, vacated CDO. So that that opinion is not on the book. And the two cases that I cited that are Ninth Circuit precedent that are still on the books do rely on they consider CDO in its analysis. What's your response to what the petitioner said on that? My response is that those are precedent decisions, as Your Honor pointed out, and they relied on that the court defers. But, you know, to be sure, this court has been deferring to the board's definition since 2009. And for Gozo, that precedent decision and and and also to be sure the board's primary, you know, mostly fulsome definition is articulated in Velasquez Herrera, which for Gozo deferred to the Sorum did three things that were, you know, gave us a clarification that it did not include it clarified there's no element of requiring proof of actual injury. So they said we never said it before. And we're now clarifying so everyone knows that we will not we find no reason to add that limitation of requiring proof of actual injury. So they just clarified that they never said it before. And they're not saying it now in Sorum. They also clarified that the definition they previously articulated that this court defers to is encompasses child abuse, but also neglect and abandonment that entire congressionally legislated term in the statute that it had to give meaning to. And then finally, it said within the universe of abuse, neglect and abandonment, that endangerment offenses will fall within there as long as they're sufficiently high. So it expounded upon what can be maltreatment, endangerment offenses can be maltreatment of a child can constitute impairment of a child's well-being, as long as that risk is sufficiently high. So with this backdrop in mind, you know, as I as I keep mentioning, this court has been deferring to the board's primary definition in Velazquez Herrera since 2009. And just, you know, the board clarified that we don't have an additional element of requiring actual proof of harm or injury to a child just as long as there was maltreatment, or there was an impairment of well-being and nothing that now we have to say, but we have to distinguish between 273 AA and 273 AB, correct? Because yes, and the board agrees with this court. Carateno focuses on the difference between the two. So we have to be an AA. Is that correct? Yes. Yes. And the board, there is a board decision called Mendoza Osorio. It's a 2016 decision. And it is in the next case's brief. It's not before the court in the briefs here. 2016 board precedent, saying explicitly what you just asked. The board said the B offense, the misdemeanor version of endangerment. It agrees. It is not endangerment. The board said because it creates only a mere possibility of harm, you know, as signaled by the words may endanger and also under circumstances not amounting to a likelihood of great bodily injury or death. You know, so it can. So, you know, we now have a comparison, as the board said, the B provision. It agrees with this court in Forgoza. That the B provision does not qualify. And but yet here with the A provision, which is the felony ground, we have a set of circumstances where explicitly in the statute, the circumstances must be create a likelihood. It must be likely that great bodily injury or death will occur. And then the risk of harm is also presented. So there the board has delineated. It has limitations, has expressed those limitations and and and has shown that this very California statute, the A prong meets it and the B prong does not. So I think I misspoke. I think I said it was the 11th circuit, but it was the 10th circuit. It's the 10th. Yes. It was the Ibarra decision out of the 10th. The Ibarra. But then subsequently, since this case, others, other circuits have joined the 9th. Yes. So we filed a 28 J letter on the most recent one, the 5th circuit in August this past year. And in addition to the fifth, we have the second, which has the second circuit stated in Flores and it reconfirmed it in 2019 in the Matthews decision addressing an argument about Supreme Court decision saying we have no reason that Flores there's no reason Flores is undermined. So they reaffirmed that they differ in the second, the third defers and the 11th differs. So the circuit split is getting wider from the 10th. It does exist. So it does exist. But as this as as your colleagues on the panel, majority panel and Martina Cedillo pointed out, and also in the Flores decision, the judges pointed out there are there are very strong reasons for rejecting Ibarra because it is in this court's colleagues terms flawed and they gave four very strong reasons as to why the Ibarra decision is flawed. And primarily Ibarra took issue with the board's method of reaching its generic definition. But the board in no way violated precedent and how it reached its definition. Supreme Court has never limited the board. I think you're over your time. I'd like to ask one question, just a point of clarification. Let's assume that the issue that was before the court in Martina Cedillo is, in fact, still an open question. Just take that as a given. If we were to conclude that Martina Cedillo was wrongly decided and that matter of storm is not entitled to Chevron deference, do you still prevail in this case? I think the answer is it depends. It depends on the reasons you articulate for not deferring to the board. Like, for example, in Ibarra. We have filed a case in the 10th Circuit that even though Sorum was rejected, Ibarra's reasons were they didn't like criminal negligence coupled with, you know, so the minimum mens rea of criminal negligence coupled with no actual injury. So we filed a brief in the case saying, well, this is outside of that because we have a higher mens rea under this endangerment statute of knowing or reckless, so it's not coupled with no proof of, you know, a requirement of actual injury. I would say here, if you say this court were to follow exactly what the Ibarra court did, I would say this statute still falls within the board's definition as primarily laid out in Velazquez-Herrera because creating, allowing for circumstances likely to cause death or great bodily injury to a child is necessarily impairing their well-being. And whether it be criminally negligent mens rea or the general intent, which also falls within this statute, that the impairment factor is so great, the likelihood is so great that it's not just the mere possibility, like under B, that a child could maybe tumble off a bed or maybe possibly get hurt, like what the court was concerned about in the Fregoso case. Okay. Thank you. Thank you. Any additional questions from my colleagues? Okay. Then we'll go back for a rebuttal from Mr. Shapiro. I think you have a minute and a half. That's right. Thank you, Your Honor. I would just note that Fregoso deferred to the definition in Velazquez-Herrera. Soram was not deferred to, okay, not when the Martinez-Cedillo decision was vacated. And I want to note also that the reason for Judge Wardlaw's dissent, the primary reason, and for Ibarra is because with Soram, the BIA crafted a civil definition for a crime that's not reasonable. They looked to civil child abuse statutes in 38 states in 2009, not the criminal laws in effect in 1996. Terms are usually defined differently in civil law and criminal law. Didn't Cedillo, even though Cedillo's not on the books anymore, I think, wasn't it Judge Bybee that took a pretty aggressive approach of saying why Ibarra was wrong? He did. Yeah. In Ibarra, the Ibarra court actually got this statute wrong, 273AA. But that shouldn't undermine the approach the Ibarra court took, which was to do a 50-state analysis from a child abuse criminal statute in 1996. Anything else? No. Thank you very much. All right. Well, thank you both for your argument. I would, even though you won't be able to jump up and say anything in the next two cases, since we're asking other people, I suggest that you just stay on so you'll have an idea of everything that the panel's hearing on the particular issue. Thank you. This matter will stand submitted.
judges: Callahan, Watford, Rakoff